```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION

UNITED STATES OF AMERICA,      §
                               §
     Plaintiff/Respondent.     §
                               §
                               §   CRIMINAL NO. H-09-300
VS.                            §   CIVIL ACTION H-11-1740
                               §
JORGE OLVERA,                  §
                               §
     Defendant/Movant,         §
```

## OPINION AND ORDER

Pending before the Court in the above referenced cause are (1) Movant Jorge Olvera's ("Olvera's") § 2255 motion to vacate, set aside or correct sentence (instrument #1 in H-11-CV-1740; #54 in H-09-CR-300); (2) the United States's motion to dismiss (#65 in H-09-CR-300); and (3) United States Magistrate Judge Frances Stacy's memorandum and recommendation (#67 in H-09-CR-300) that the government's motion to dismiss be granted and Olvera's § 2255 motion be denied. Olvera did not file any objections to the Magistrate Judge's memorandum and recommendation.

A *pro se* complaint is "held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 521 (1972). *Pro se* pleadings are liberally construed. *Haines*, 404 U.S. at 521. Nevertheless *pro se* litigants must provide sufficient facts in support of their claims; "mere conclusory allegations on a critical

-1-

issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1009, 1011 (5th Cir. 1983); *see also U.S. v. Onwuasoanya*, 180 F.3d 261 (Table), No. 96-20877, 1999 WL 274479, *2 (5th Cir. Apr. 16, 1999). "[A] district court does not commit error when it disposes of a habeas petitioner's claims without holding a full-fledged hearing when those claims are unmeritorious, conclusory, and wholly unsupported by the record." *Id.* at 1011 n.2; *id*.

On July 3, 2009 Olvera pled guilty without a written plea agreement to and was convicted of illegal reentry by a previously deported alien after an aggravated felony conviction in violation of 8 U.S.C. § 1326(a) and (b)(2).[1]

---

[1] The statute provides in relevant part,

(a) In general

Subject to subsection (b) of this section, any alien who-

    (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

    (2) enters, attempts to enter, or is at any

Olvera's records show he had numerous prior convictions, including unauthorized use of a motor vehicle, assault, failure to identify to police officer, carrying a weapon and evading arrest. His first aggravated felony conviction in Harris County, Texas was for possession with intent to deliver cocaine, for which he was sentenced on May 3, 2003 to five years of imprisonment.[2] He was deported to Mexico on January 14, 2005. He returned to the United

---

> time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
>
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.
>
> (b) Criminal penalties for reentry of certain removed aliens
>
> Notwithstanding subsection (a) of this section, and the case of any alien described in such subsection–
>
> . . .
>
> (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both . . . .

[2] Olvera had previously been deported to Mexico from Hidalgo, Texas on February 21, 1998.

States illegally around August 2005.  He was found in Huntsville, Texas on July 18, 2006 and a record search revealed no evidence that he had obtained consent before March 2003 from the U.S. Attorney general to reapply for admission into the United States and no evidence that he had obtained corresponding consent after February 2003 from the Secretary of the Department of Homeland Security.  On May 24, 2006, he was convicted in Harris County, Texas for possession with intent to deliver cocaine and evading arrest and was sentenced to two years' confinement.  Immigrations and Customs Enforcement officials found Olvera using the name George Ponce Olvera at the Texas Department of Criminal Justice-- Institutional Division in Huntsville, Texas.  He was paroled from state custody to an immigration detainer on May 5, 2009.

Relating to the instant § 2255 motion, for pleading guilty to violating 8 U.S.C. § 1326(a) and (b)(2) on November 19, 2009 Olvera was sentenced to 96 months in the custody of the Bureau of Prisons and to a term of three years of Supervised Release.  A special assessment of $100 was remitted on the government's motion.  Olvera appealed his sentence.  His attorney filed an *Anders* brief[3] stating there were no non-frivolous issues for appeal.  Olvera responded with a letter claiming that the district court misinformed him of the possibility of deportation and did not consider whether his previous State of Texas convictions were valid. The Fifth Circuit

---

[3] *Anders v. California*, 386 U.S. 738 (1967).

dismissed the appeal, stating that it could not address Olvera's ineffective assistance of counsel claims on direct appeal when the claim had not been raised in the district court. *U.S. v. Olvera*, 464 Fed. Appx. 191 (5th Cir. Dec. 1, 2010)(*per curiam*).

The Sixth Amendment guarantees a defendant the right to have counsel present at all "'critical' stages of the criminal proceedings" against them. *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012). The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), *citing Missouri v. Frye*, 132 S. Ct. at 1405, and *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010). Moreover, the two-prong test under *Strickland v. Washington*, 466 U.S. 668 (1984), "'applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id., quoting Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To establish that counsel was ineffective, the defendant must prove: (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland,* 466 U.S. at 687 (the "performance" prong), and (2) "that the deficient performance prejudiced the defense" (the "prejudice" prong). *Id.* The reviewing court need not consider both prongs if the court finds that the defendant has failed to prove either. *Id.* For the deficient performance prong, counsel's performance must be examined "on the facts of the particular case, viewed as of the time of counsel's conduct" and

the defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured according to "prevailing professional norms." *Id.* at 690, 688. To prove that trial counsel's deficient performance prejudiced the defense, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of a criminal trial]." *Id.* This heavy burden requires a "substantial," not merely a "conceivable," likelihood of a different result. *Harrington v. Richter,* 131 S. Ct. 770, 787 (2011); *see also Cullen v. Pinholster,* 131 S. Ct. 1388, 1403 (2011). In deciding whether the result would have been different, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695; *Brown v. Thaler*, 684 F.3d 482, 491 (5th Cir. 2012), *cert. denied*, ___ S. Ct. ___, No. 12-7258, 2011 WL 598586 (S. Ct. Feb. 19, 2013).

In the context of a guilty plea, the Supreme Court and the Fifth Circuit have held that a defendant must demonstrate that counsel provided ineffective assistance and that but for counsel's errors, the defendant would not have pleaded guilty, but would have gone to trial. *Hill,* 474 U.S. 52; *Joseph v. Butler*, 838 F.2d 786, 792 (5th Cir. 1988). The defendant must provide more than mere

allegations to that effect.  *Joseph*, 838 F.2d at 791.  Furthermore, under the prejudice prong of *Strickland*, even where counsel rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary.  *DeVille v. Whitley*, 21 F.2d 654, 659 (5th Cir. 1994).

On a claim of ineffective assistance of counsel, the court is "highly deferential" and there is a strong presumption that counsel's performance was reasonable or "might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.  Given this presumption, the court is "'required not simply to give [the] attorneys the benefit of the doubt, . . . but to affirmatively entertain the range of possible reasons [the defendant's] counsel may have had for the proceeding as they did.'"  *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012), *quoting Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011).  "'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *U.S. v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)(*quoting Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)), *cert. denied*, 525 U.S. 809 (1998).  Courts must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

A guilty plea that is not knowingly, voluntarily, and intelligently entered is invalid. *U.S. v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996). A federal habeas court will uphold a guilty plea "if it is shown by the record . . . that a defendant understood the charge and its consequences when he pled guilty." *Deville*, 21 F.3d at 657, *citing Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir.), *cert. denied*, 474 U.S. 838 (1985). To determine the validity of a guilty plea, courts must decide "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56; *U.S. v. Juarez*, 672 F.3d 381, 385-86 (5th Cir. 2012). A plea is intelligent if the defendant understood the nature and substance of the charges against him and not necessarily whether he understood their technical legal effect. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995), *citing Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied*, 503 U.S. 988 (1992); *U.S. v. Suarez*, 155 F.3d 521, 524-25 (5th Cir. 1998). A guilty plea is "knowing" when the defendant understands "the consequences" of a guilty plea, i.e., he knows the maximum prison term and fine for the offense charged. *Guerra*, 94 F.3d at 995. A guilty plea in not voluntary if it is obtained by threats, misrepresentations, unfulfilled promises, or promises of an improper nature." *U.S. v. Hernandez*, 234 F.3d 252, 255 n.3 (5th Cir, 2000).. Unless a defendant receives a "reasonably effective assistance of counsel in connection with his

decision to plead guilty [he] cannot be said to have made that decision either intelligently or voluntarily." *Mason v. Balcom*, 531 F.2d 717, 725 (5th Cir. 1976).

Conclusory allegations, regardless whether they are made by a *pro se* litigant or counsel, are insufficient to raise cognizable claims of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000), *citing Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

"Normally, a defendant who has testified at a plea hearing to the voluntariness of his or her guilty pleas will not be allowed to refute such testimony given under oath. 'Solemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceedings.'" *U.S. v. Merrill*, Cr. Docket No. 02-277, 2008 WL 2355728, *14 (E.D. La. June 5, 2008), *citing U.S. v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 2008), *quoting Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977). In *Missouri v. Frye*, 132 S. Ct. at 1406, Justice Kennedy wrote for the majority,

> Before a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record. This affords the State substantial protection against later claims that the plea was the result of inadequate advice. At the plea's entry proceedings the trial court and all counsel have the opportunity to establish on the record that the defendant understands the process that led to any offer, the advantages and disadvantages of accepting it, and the sentencing consequences or possibilities that will ensue once a conviction is entered on the plea.

Generally a defendant will not be allowed to refute his testimony given at a plea hearing under oath. *U.S. v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998), *citing U.S. v. Guller*, 769 F.2d 1095, 1099 (5th Cir. 1985).

A key exception, relevant here, is a claim of ineffective assistance of counsel about deportation consequences during guilty plea negotiations. In *Padilla v. Kentucky*, 130 S. Ct. 1473 (March 31, 2010) the Supreme Court held that counsel renders deficient performance by his failure to advise a non-citizen defendant of the possible deportation consequences of a guilty plea, which renders the defendant's plea involuntary. The two-prong *Strickland* test for ineffective assistance of counsel applies to alleged violations of this right. *Id.* 1482. In *Marroquin v. U.S.*, 480 Fed. Appx. 294, 298-99 (5th Cir. June 26, 2010), the panel opined,

> Given the paramount importance of effective representation during the plea bargaining process, it is difficult to see how a violation of that right can be erased by a trial court's general and talismanic plea colloquy statement after that bargaining process is complete and immediately prior to the court's acceptance of the guilty plea. . . .
> The Supreme Court has long contrasted the unique and critical obligations of defense counsel during the plea bargaining process with the far more limited role of the trial court to ensure a minimally valid guilty pleas. "[C]ounsel's function as assistant to the defendant [gives rise to] the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions" after "mak[ing] reasonable investigations." *Strickland*, [466 U.S. at 688]. Counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla*, 130 S. Ct. at 1484 . . . . Thus, the *Padilla* court stressed that

-10-

> "[i]t is quintessentially the obligation of counsel to provide her client with available advice about an issue like **deportation**." *Id.* at 1484 (emphasis added).
> Accordingly, the judicial plea colloquy is no remedy for counsel's deficient performance in fulfilling these obligations.

The panel further explained, "If counsel fails in that 'quintessential[] . . . duty, and the defendant consequently accepts a plea that mandates deportation, the damage has been done by the time the defendant appears before the court to formally enter the plea." *Id.* at 301, *citing Padilla*, 130 S. Ct. at 1484.

In *Padilla v. Kentucky*, 130 S. Ct. 1473 (March 31, 2010) the Supreme Court held that counsel renders deficient performance by his failure to advise a non-citizen defendant of the possible deportation consequences of a guilty plea, which renders the defendant's plea involuntary. The two-prong *Strickland* test for ineffective assistance of counsel applies to alleged violations of this right. *Id.* 1482. Olvera contends that at no point was he advised of the deportation consequences of pleading guilty.

Olvera was rearraigned on July 30, 2009 and sentenced on November 19, 2009, long before *Padilla* was issued on March 31, 2010. On May 9, 2010, in *U.S. V. Amer*, 681 F.3d 211, 212-13 (5th Cir. 2012), the Fifth Circuit joined the Seventh and Tenth Circuits in holding that under the retroactivity principles established in *Teague v. Lane*, 489 U.S. 288 (1989), the rule in *Padilla* is a "new rule" and does not apply retroactively to convictions that become final before the rule is announced. Olvera's sentence only became

final after the Fifth Circuit dismissed his appeal on December 1, 2010 and he did not further appeal.[4]  On February 12, 2012 the Supreme Court held that *Padilla* does not apply retroactively and may not be used as the basis for a collateral challenge to a conviction that had become final before *Padilla* was decided. *Chaidez v. U.S.*, 133 S. Ct. 1103 (Feb. 12, 2013).

Thus at the time that Olvera was indicted, rearraigned, and sentenced, *Padilla* was not the law.  Although Olvera's conviction was not final when *Padilla* was issued, as noted, for the deficient performance prong of ineffective assistance of counsel, counsel's performance must be examined "on the facts of the particular case, viewed as of the time of counsel's conduct" and the defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured according to "prevailing professional norms." *Strickland*, 466 U.S. at 690, 688.  Even if counsel did not advise Olvera of the deportation consequences of a guilty plea while negotiating one and obtaining Olvera's agreement, her performance would not fall below an objective standard of reasonableness according to professional norms at the time. Furthermore, the Court notes that Olvera twice before was convicted

---

[4] A conviction is "final" when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky*, 479 U.S. 314, n. 6 (1987), citing *U.S. v. Johnson*, 457 U.S. 537, 542, n.8 (1982), citing *Linkletter v. Walker*, 381 U.S. 618, 622 n.5 (1965).

of felonies and was deported; thus from experience he was aware that he could be again.[5]

Even if *Padilla* would apply retroactively and make counsel's alleged lack of advice about deportation consequences ineffective assistance and even if the Court were to assume that counsel did not advise Olvera about those consequences, under the prejudice prong Olvera has failed to show that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different" and he would not have decided to plead guilty, but instead proceeded to trial. *Strickland*, 466 U.S. at 694; *Hill*, 474 U.S. at 59; *Premo v. Moore*, 131 S. Ct. 733, 744 (2011). Conclusory allegations that Olvera would have insisted on proceeding to trial are insufficient to establish prejudice. Moreover Olvera is required to affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. He has not done so.

In his § 2255 motion, in addition to his claim of ineffective assistance of counsel based on failure to advise him of the deportation consequences of a guilty plea, Olvera makes the following arguments: (1) the district court erred by not dismissing his indictment because his prior deportation (which is an element

---

[5] The government has submitted a copy of the Director's Final Administrative Removal Order under Section 238(b) of the Immigration and Nationality Act, #65-1, dated January 5, 2005, finding Olvera's final conviction of an aggravated felony and the administrative record "by clear, convincing, and unequivocal evidence" demonstrated that he, as an alien, was deportable and he was ordered to be removed from the United States to Mexico.

of his conviction under § 1326) violated his due process rights, the district court failed to consider the validity of his prior Texas convictions, and it failed to inform him about the immigration consequences of pleading guilty; (2) Olvera's counsel was ineffective for failing to challenge the validity of Olvera's prior deportation at the time of Olvera's sentencing; (3) ineffective assistance of counsel in failing to submit documentation provided by Olvera showing Olvera's rehabilitative participation in multiple self-help and awareness groups while incarcerated in state prison for this Court's review for § 3553(a) factors and possible consideration of variance from the prescribed United States Sentencing Guidelines range; (4) ineffective assistance of counsel in misinforming Olvera about the charge against him; and (5) ineffective assistance of counsel in counsel's failure to inform him of his privilege against self-incrimination.

The record here was expanded to include an affidavit of Lourdes Rodriguez, Olvera's trial counsel, responding to his claims.  Attachment to #65.

The Magistrate Judge's memorandum and recommendation (#67) quotes extensively from the Transcript of Movant's Rearraignment and Sentencing (#39), which evidences that, during the plea colloquy, the undersigned Judge asked if he had talked with counsel about the indictment and he answered that he had, that she helped him understand the charges, and that he was fully satisfied with

her representation and advice.  The Court then advised Movant of the maximum penalty he faced in years of imprisonment, fines, and term of supervised release if he pled guilty to 8 U.S.C. § 1326(a) and (b), including that a finding of guilt could result in his being deported from the United States; of his right to plead not guilty and proceed to trial by jury with assistance of counsel and with the right to cross examine witnesses; of the rights he would be waiving by pleading guilty; of the essential elements of the offense of an illegal alien in possession of a fire arm; and of what the government was prepared to prove if the case proceeded to trial.  In responses to questioning by the Court, Movant testified that no one had attempted to force him to plead guilty or made any promises or assurances of any kind to him to persuade him to plead guilty and that he was pleading guilty because he was guilty.  He further stated that he understood that he might be deported as a consequence of pleading guilty and that he and his attorney had discussed how the Sentencing Guidelines might apply to his case. The Court reviewed the essential elements of the offense with which he was charged and he responded that he understood them and stated what he had done to commit the crime to which he was pleading guilty.

Moreover, as noted in the Magistrate Judge's memorandum and recommendation, the transcript of the Sentencing Hearing on November 19, 2009 demonstrates that counsel made objections to the

presentence report relating to sentencing. First she stated that Olvera had asked her to object to the offenses in September 1995, but as a matter of law she conceded that they occurred within the ten years of his illegal return to the United States and thus should be considered in his sentence. The undersigned judge overruled Olvera's objection. When the probation department cited Olvera's lengthy but "underrepresentative criminal history . . . as a factor for the Court to consider an upward departure" from the Guidelines, Counsel argued that the Court should view Olvera's criminal history as part of his drug abuse, abused childhood, and mental illness and thus not outside the heartland of cases,[6] and

---

[6] Initially each Sentencing Guideline was intended to apply to a "heartland" of cases, i.e., a set of typical cases embodying the conduct each guideline describes." U.S.S.G. ch.1 pt. A, intro. comment. 4(b). If the district court determined that a defendant's conduct "significantly differs from the norm," the judge could depart from the applicable guideline range. *Id.* A court could depart upward or downward if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). Moreover the district court can depart upward even if the Sentencing Commission already incorporated the reason for the departure in a sentencing adjustment if "the court determines that, in light of unusual circumstances, the weight attached to the factor under the guidelines is inadequate or excessive." U.S.S.G. § 5K2.0; *Koon v. U.S.*, 528 U.S. 81, 95 (1996). "Whether a given factor is present to a degree not adequately considered by the Commission . . . [is a] matter[] determined in large part by comparison with the facts of other Guidelines cases."
    Since the issuance of *U.S. v. Booker*, 551 U.S. 220 (2005)(holding that the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.*, violated the Sixth Amendment in that it required district judges to follow the United States Sentencing Guidelines, the Guidelines are advisory only and individual sentencing decisions are subject to appellate review for

even a mitigating factor to go below the guidelines. The Court determined that Olvera's criminal conduct was within the "heartland" of the Guidelines, did not depart from the Guideline range, and found that a sentence at the top of the guidelines was appropriate to satisfy the sentencing objectives set forth in 18 U.S.C. § 3553(a).[7]

Furthermore, the Magistrate Judge quoted from counsel's affidavit (attached to #65), which addresses each of Olvera's § 2255 claims. Ms. Rodriguez's responses to the claims made in Olvera's § 2255 motion reinforce the strong presumption that her performance was reasonable, "a conscious and informed decision on trial tactics and strategy." *Jones*, 287 F.3d at 331. Rodriguez Affid., attached to #65); Magistrate Judge's memorandum and recommendation #67 at pp.18-20.

"[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*,

---

"reasonableness"), the district court must still properly calculate the sentencing range to be used in deciding on what sentence to impose by consulting them and § 3553(a) factors. *Gall v. U.S.*, 552 U.S. 38, 48-51 (2007)("Guidelines should be the starting point and the initial benchmark.").

[7] The Fifth Circuit has opined that departure from the Sentencing Guidelines is warranted only when the court finds, "after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," that the case is "out of the Guideline's heartland." *States v. Garayh*, 235 F.3d 230, 233 (5th Cir. 2000).

550 U.S. 465, 475 (2007). "'[C]ontentions that in the face of the record are wholly incredible' will not entitle one to discovery or a hearing." *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996), *quoting Blackledge v. Allison*, 431 U.S. 63, 74 (1977). *See also* 28 U.S.C. § 2255(c), Rule 8 of the Rules Governing Section 2255 Proceedings. The Court finds that such is the case here.

Because the Court concurs with the Magistrate Judge's memorandum and recommendation, it hereby ADOPTS it as the Court's own. The Court further

ORDERS that the United States's motion to dismiss (#65 in H-09-CR-300) is GRANTED and Olvera's § 2255 motion to vacate, set aside or correct sentence (instrument #1 in H-11-CV-1740; #54 in H-09-CR-300) is DENIED.

An appeal of a final order in a habeas corpus proceeding cannot be taken "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Rule 11 of the § 2255 rules instructs this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the § 2255 applicant even if the applicant does not request one or file a notice of appeal." Because the Court finds that Movant has failed to make a substantial showing of the denial of a constitutional right, nor shown that reasonable jurists could debate whether the motion should have been resolved differently, nor that the issues raised by Movant should be encourage to proceed

further,[8] the Court

ORDERS that a certificate of appealability is DENIED.

**SIGNED** at Houston, Texas, this 22nd day of May, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[8] *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *U.S. v. Jones*, 287 F.3d 325, 329 (5th Cir. 2001).